# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

TRISURA SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

v.

NYRSHA, LLC d/b/a Bamboo
Lounge II; CHIQUITHA DOUGLAS;
and BELINDA TROTMAN,

    Defendants.

CV 224-105

## ORDER

Before the Court is Plaintiff Trisura Specialty Insurance Company's motion for judgment on the pleadings. Dkt. No. 26. No Defendant has filed a response to the motion, and the time for doing so has long passed. As such, the motion is ripe for review.

## BACKGROUND

This declaratory judgment insurance action stems from two underlying lawsuits brought against Nyrsha, LLC ("Nyrsha"), which does business as the Bamboo Lounge II. With the instant lawsuit, Nyrsha's insurer, Plaintiff Trisura Specialty Insurance Company ("Trisura"), seeks a determination as to its obligation to defend and indemnify Nyrsha in connection with the underlying lawsuits.

### I. The Trotman Lawsuit

In the first underlying lawsuit, Belinda Trotman alleges that, on or about January 15, 2022, she was a patron at the Bamboo

Lounge in Brunswick, Georgia, when "multiple gunmen were allowed to freely enter the Premises and shoot [her]." Dkt. No. 1-6 at 4. Trotman did not know the shooter or provoke the shooting. Id. Trotman further alleges that "[t]he gunman prevented [her] from leaving the premises and/or fleeing to safety." Id. at 11. Trotman alleges that she suffered injuries, including shock, horror, fear, bodily injuries, pain and suffering, expenses of medical care, diagnosis and treatment, lost capacity for the enjoyment of life, and other economic damages, such as lost wages. Id. at 5.

Trotman also alleges that prior to the date of the shooting, "there had been criminal activity at the Premises and in the area surrounding the Premises that was substantially similar" to the shooting, including fights, break-ins, robberies, larceny, aggravated assaults, aggravated batteries, and reports of suspicious persons. Id. at 6, 8. Trotman alleges that Nyrsha knew about such criminal activity and failed to provide adequate security to keep its patrons safe. Id. at 6. Trotman brings against Nyrsha claims for active negligence, premises liability, nuisance, and false imprisonment. See generally id.

## II.  __The Douglas Lawsuit__

In the second underlying lawsuit, Chiquitha Douglas alleges that, on or about January 15, 2022, she was a patron at the Bamboo Lounge when "multiple gunmen were allowed to freely enter the Premises and shoot others in the building causing panic and other

2

patrons to trample [her]." Dkt. No. 1-3 at 4. Douglas did not know the shooter or provoke the shooting. Id. Douglas further alleges that "[t]he gunman prevented [her] from leaving the premises and/or fleeing to safety." Id. at 10. Douglas alleges that she suffered injuries, including shock, horror, fear, bodily injuries, pain and suffering, expenses of medical care, diagnosis and treatment, lost capacity for the enjoyment of life, and other economic damages, such as lost wages. Id. at 5.

Douglas also alleges that prior to the date of the shooting, "there had been criminal activity at the Premises and in the area surrounding the Premises that was substantially similar" to the shooting, including fights, break-ins, robberies, larceny, aggravated assaults, aggravated batteries, and reports of suspicious persons. Id. at 6, 8. Douglas alleges that Nyrsha knew about such criminal activity and failed to provide adequate security to keep its patrons safe. Id. at 6. Douglas brings against Nyrsha claims for active negligence, premises liability, nuisance, and false imprisonment. See generally id.

**III. The Policy**

Trisura issued to Nyrsha a commercial general liability policy, No. OSU1002588-00, with a policy period of January 29, 2021, to January 29, 2022 (the "Policy"). Dkt. No. 1-2 at 2.[1] As

---

[1] The Policy, attached to Trisura's complaint, dkt. no. 1-2, is central to its claims and undisputed. See, e.g., Dkt. No. 12 ¶ 10 ("Defendant states that the Policy (as defined in the Complaint and attached thereto) speaks for itself.").

relevant here, the Policy sets forth the scope of coverage and
contains certain endorsements that modify coverage.

### a. Scope of Coverage

There are two coverage provisions relevant to this action:
"Coverage A" and "Coverage B."

### i. Coverage A – "Bodily Injury"

Coverage A provides coverage for "bodily injury."
Specifically, Coverage A states that Trisura "will pay those sums
that the insured [Nyrsha] becomes legally obligated to pay as
damages because of 'bodily injury' or 'property damage' to which
this insurance applies." Id. at 9. Trisura "will have the right
and duty to defend the insured against any 'suit' seeking those
damages." Id. "'Bodily injury' means bodily injury, sickness or
disease sustained by a person, including death resulting from any
of these at any time." Id. at 21.

### ii. Coverage B – "Personal and Advertising Injury Liability"

Coverage B provides coverage for "personal and advertising
injury." The provision states: "We [Trisura] will pay those sums
that the insured [Nyrsha] becomes legally obligated to pay as
damages because of 'personal and advertising injury' to which this
insurance applies." Id. at 14. "We will have the right and duty
to defend the insured against any 'suit' seeking those damages."
Id. "'Personal and advertising injury' means injury, including
consequential 'bodily injury,' arising out of one or more of the

4

following offenses: . . . False arrest, detention or imprisonment[.]" Id. at 23.

### b. Relevant Endorsements

The Policy contains certain endorsements that modify the scope of coverage, one of which is relevant to this action. The "Firearms or Weapons Exclusion" modifies Coverage A and Coverage B by excluding from coverage injuries "arising out of firearms or weapons or omission in connection with the prevention or suppression of firearms or weapons, . . . whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person[.]" Id. at 40.

### IV.  This Declaratory Judgment Action

On September 11, 2024, Trisura filed this declaratory judgment action against its insured, Nyrsha, as well as the plaintiffs in the underlying lawsuits, Trotman and Douglas. Dkt. No. 1. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Trisura seeks "a declaration that it does not owe a duty to defend or indemnify Nyrsha . . . for the Underlying Lawsuits." Id. at 2. On October 30, 2024, Nyrsha filed its answer, and on November 19, 2024, Douglas and Trotman filed their answer. Dkt. Nos. 12, 14. Then, on February 27, 2025, Trisura moved for judgment on the pleadings. Dkt. No. 26. No response was filed by Nyrsha, Trotman or Douglas.

**LEGAL AUTHORITY**

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (quotation marks omitted) (quoting Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001)). "In determining whether a party is entitled to judgment on the pleadings," the Court must "accept as true all material facts alleged in the non-moving party's pleading" and "view those facts in the light most favorable to the non-moving party." Id. (citing Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998)). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." Id. (citing Stanton v. Larsh, 239 F.2d 104, 106 (5th Cir. 1956)).

In considering a motion for judgment on the pleadings, the Court generally cannot consider matters outside the pleadings without converting the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d). Federal Rule of Civil Procedure 7(a) defines "pleadings" as complaints, counterclaims, crossclaims, answers, and court-ordered replies to answers. See Fed. R. Civ. P. 7(a). Notwithstanding, documents attached to a motion for judgment on the pleadings may be considered without converting the motion into one for summary judgment if the attached document is central to the plaintiff's claim and undisputed. Horsley v. Feldt, 304 F.3d

1125, 1134-35 (11th Cir. 2022) (holding that incorporation by reference doctrine applies to motions for judgment on the pleadings).

## DISCUSSION

Trisura's first argument in support of its motion for judgment on the pleadings is that the Policy's Firearms Exclusion bars defense and indemnity coverage for the underlying lawsuits against Nyrsha. Dkt. No. 26-1 at 15. Because "insurance is a matter of contract," and the parties are sitting in diversity, the Court turns to applicable state law. Evanston Ins. Co. v. Xytex Tissue Servs., LLC, 378 F. Supp. 3d 1267, 1284 (S.D. Ga. 2019) ("[A]s this is a diversity jurisdiction case, the Court is bound by the applicable state law governing the contract.").

### I.  Georgia Insurance Law[2]

In Georgia, "the duty to defend and the duty to indemnify are discrete obligations." S. Tr. Ins. Co. v. Mountain Express Oil Co., 828 S.E.2d 455, 458 (Ga. Ct. App. 2019). "The duty to defend arises where the claims as alleged in the complaint potentially fall within the policy coverage," id., whereas the duty to indemnify arises when, or if, liability is ultimately imposed on the insured, Shafe v. American States Insurance Co., 653 S.E.2d 870, 873 (Ga. Ct. App. 2007). An insurer's duty to defend is therefore "broader than its duty to indemnify." Id.

---

[2] The parties do not dispute that Georgia law applies to the interpretation of the Policy. See Dkt. No. 26-1 at 16.

Under Georgia law "'[a]n insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured.'" Nat'l Cas. Co. v. Pickens, 582 F. App'x 839, 841 (11th Cir. 2014) (quoting City of Atlanta v. St. Paul Fire & Marine Ins. Co., 498 S.E.2d 782, 784 (Ga. Ct. App. 1998)). In evaluating whether an insurer has a duty to defend, courts look to the allegations in the underlying complaint "to determine whether a liability covered by the policy is asserted." HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc., 701 F.3d 662, 666 (11th Cir. 2012) (emphasis in original) (quoting Bituminous Cas. Corp v. N. Ins. Co. of New York, 548 S.E.2d 495, 497 (Ga. Ct. App. 2001)). Thus, "the issue is not whether the insured is actually liable to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend." HDI-Gerling, 701 F.3d at 666 (emphasis in original) (quoting Bituminous Cas. Corp., 548 S.E.2d at 497).

In the duty to defend analysis, the terms of the insurance policy are "liberally construed in favor of coverage." Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh, 696 S.E.2d 326, 331-32 (Ga. Ct. App. 2010). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." Scott v. Gov't Emps. Ins. Co., 700 S.E.2d 198, 201 (Ga. Ct. App. 2010) (citation omitted) (emphasis added). "Where the claim is one of potential

8

coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured." Landmark Am. Ins. Co. v. Khan, 705 S.E.2d 707, 710 (Ga. Ct. App. 2011).

Moreover, policy exclusions "must be strictly construed." Great Am. All. Ins. Co. v. Anderson, 847 F.3d 1327, 1332 (11th Cir. 2017) (applying Georgia law).  A policy exclusion will not relieve an insurer of its duty to defend unless the provision "unambiguously exclude[s] coverage." BBL-McCarthy, LLC v. Baldwin Paving Co., 646 S.E.2d 682, 684 (Ga. Ct. App. 2007).  Ambiguities in the terms of the insurance contract must be resolved in favor of the insured.  SCI Liquidating Corp. v. Hartford Fire Ins. Co., 181 F.3d 1210, 1214 (11th Cir. 1999) (applying Georgia law).

**II.  Duty to Defend**

The Court's determination as to the duty to defend is guided by "a two-step inquiry:  first, a determination of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion applies to negate coverage." Nuvell Nat'l Auto Fin., LLC v. Monroe Guar. Ins. Co., 736 S.E.2d 463, 468 (Ga. Ct. App. 2012).

**a. Coverage**

As discussed *supra*, the Policy provides two sources of coverage that are relevant here:  Coverage A (Bodily Injury Liability) and Coverage B (Personal and Advertising Injury Liability).  Notably, Trisura does not dispute that Trotman and Douglas's injuries fall within the scope of coverage.  Moreover,

9

the Court easily finds that both Trotman and Douglas assert a claim for bodily injury, dkt. nos. 1-3 at 4 (Douglas alleging she was trampled after the gunmen began shooting), 1-6 at 4 (Trotman alleging she was shot), and personal injury, which expressly includes false imprisonment, dkt. nos. 1-3 at 10 (alleging "[t]he gunman prevented [her] from leaving the premises and/or fleeing to safety"), 1-6 at 11 (same).

### b. Exclusions to Coverage

Next, the Court must consider whether Trotman and Douglas's claims are subject to any exclusion to coverage. The Firearms or Weapons Exclusion excludes coverage for bodily injury or personal and advertising injury "arising out of firearms or weapons or out of any act or omission in connection with the prevention or suppression of firearms or weapons, including failure to warn, train or supervise, whether caused by or at the instigation or direction of the insured." Dkt. No. 1-2 at 40. The question becomes whether Trotman and Douglas's injuries all "aris[e] out of firearms or weapons." Id.

An exclusion clause in an insurance policy is "focused solely upon the genesis of the underlying plaintiff's claims—if those claims arose out of the excluded acts[,] then coverage need not be provided." Hays v. Ga. Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 927 (Ga. Ct. App. 2012). "[W]hen the phrase 'arising out of' is found in an exclusionary clause of an insurance policy, Georgia courts interpret that phrase narrowly, 'applying the "but for"

test traditionally used to determine cause-in-fact for tort claims.'" Houston Specialty Ins. Co. v. Five Paces Inn Co., 823 F. App'x 897, 899 (11th Cir. 2020) (quoting Barrett, 696 S.E.2d at 332). That is, "[c]laims arise out of excluded conduct when 'but for' that conduct, there could be no claim against the insured." Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs, 788 S.E.2d 74, 77 (Ga. Ct. App. 2016). Conversely, "[a] claim does not 'arise out of' a circumstance if, independent of that circumstance, the claim could still exist." Langdale Co. v. Nat'l Union Fire Ins. Co., 609 F. App'x 578, 588 (11th Cir. 2015) (citation omitted) (applying Georgia law). Thus, the pertinent question is whether, in the absence of firearms or weapons, there would be no claim against Nyrsha at all. Hays, 722 S.E.2d at 927.

The Policy excludes coverage for, as relevant here, bodily injury or personal and advertising injury "that would not have occurred but for [firearms]." Powe v. Chartis Specialty Ins. Co., No. 1:16-CV-1336, 2017 WL 3525441, at *3 (N.D. Ga. June 1, 2017). A "firearm that gives rise to [Trisura's] liability need not, however, be used, or cause bodily injury." Id. "[R]eading in any such requirements adds words to the clause that it does not contain, nor that its meaning implicitly requires." Id. "So long as a given firearm was the cause-in-fact of [the insurer's] liability, the exclusionary clause bars coverage." Id. Trisura argues that Trotman and Douglas's injuries "arise exclusively out

11

of firearms and/or acts or omissions in connection with the prevention or suppression of firearms." Dkt. No. 26-1 at 19.

Trotman alleges she was shot by one of the gunmen. Dkt. No. 1-6 at 4. Douglas alleges she was trampled by others after the gunmen started shooting. Dkt. No. 1-3 at 4. Both Trotman and Douglas allege "[t]he gunman prevented [her] from leaving the premises and/or fleeing to safety." Dkt. Nos. 1-3 at 10, 1-6 at 11. Both Trotman and Douglas allege Nyrsha knew about criminal activity near the lounge and "failed to provide adequate security to keep its patrons safe." Dkt. Nos. 1-3 at 6, 1-6 at 6.

To determine whether Trotman and Douglas's injuries arise out of firearms requires an analysis of "legally significant causation." Powe, 2017 WL 3525441, at *4. Did firearms cause their injuries, or did Nyrsha's alleged negligence in not securing the lounge?

The Court finds all of Trotman and Douglas's claims arise out of firearms. To begin, Trotman's bodily injuries resulting from her being shot "arose out of [her] assailant's use of a firearm (how else does one get shot?). But for the gun, the claim [Trotman] brought would not exist." Id. So, too, Douglas's bodily injuries resulting from her being trampled arose out of the gunmen's use firearms. Indeed, Douglas's complaint states the gunmen "sho[t] others in the building causing panic and other patrons to trample [her]." Dkt. No. 1-3 at 4. But for the firearm, Douglas would not have been trampled.

12

As for Trotman and Douglas's personal injuries arising from their alleged false imprisonment, those claims also arise out of firearms.  Again, Trotman and Douglas allege that gunmen, that is, persons carrying firearms, prevented them from being able to leave or flee to safety.  The "exclusion 'is focused solely upon' claims that spring from firearms." Powe, 2017 WL 3525441, at *4 (citing Continental Cas. Co. v. H.S.I. Fin. Servs., Inc., 466 S.E.2d 4, 7 (Ga. 1996)).  "So long as a firearm causes liability, [the exclusion] applies. . . .  [I]t does not matter the manner in which the gun causes liability, just that it does." Powe, 2017 WL 3525441, at *5.

That Nyrsha's alleged "negligence in securing [its] property also qualifies as a but for cause" of Trotman and Douglas's claims "is really neither here nor there." Id.  Nyrsha's alleged negligence does "not remove the claim[s] from the exclusion's clutches." Id.  Though the Firearms Exclusion is broad, "that breadth does not translate to ambiguity" and "injects no opacity that requires resort to anything beyond the usual contract construction canons." Id.

At the end of the day, firearms were the cause of Trotman and Douglas's damages.  Those led to their negligence, premises liability, nuisance, and false imprisonment claims against Nyrsha. The Firearms Exclusion bars coverage for these claims.

In conclusion, "where the complaint filed against the insured does not assert any claims upon which there would be insurance

13

coverage, the insurer is justified in refusing to defend the insured's lawsuit." <u>City of Atlanta v. St. Paul Fire & Marine Ins. Co.</u>, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998).  Here, the plain, bargained-for terms of the Policy exclude Trotman and Douglas's injuries from coverage.  Therefore, Trisura has no duty to defend Nyrsha in the underlying lawsuits.  Accordingly, Trisura's motion for judgment on the pleadings as to its duty to defend is **GRANTED.**

### III.  Duty to Indemnify

Trisura argues that because it "has no duty to defend, it has no duty to indemnify."  <u>See</u> Dkt. No. 26-1 at 20.  "Typically, an insurer's duty to indemnify 'is not ripe for adjudication until the underlying lawsuit is resolved.'"  <u>Owners Ins. Co. v. Robertson</u>, No. 1:22-cv-409, 2023 WL 146245, at *4 (N.D. Ga. Jan. 10, 2023) (quoting <u>Mid-Continent Cas. Co v. Delacruz Drywall Plastering & Stucco, Inc.</u>, 766 F. App'x 768, 770 (11th Cir. 2019)).  However, the Eleventh Circuit has recognized that "the duty to indemnify can, under some circumstances, be decided before the underlying case reaches judgment." <u>Snell v. United Specialty Ins. Co.</u>, 102 F.4th 1208, 1218 (11th Cir. 2024).  In that case, the Eleventh Circuit "conclude[d] that the duty to indemnify issue is ripe" because the insurance application at issue "foreclose[d] any duty to indemnify for the same reason it foreclose[d] any duty to defend" and there was "no dispute of material fact on the duty to indemnify."  <u>Id.</u> at 1219-20.  Though the court in <u>Snell</u> applied

14

Alabama law, application of Georgia law leads to the same outcome here. Id. at 1219 (The plaintiff "points to no authority, and we are aware of none, holding that the duty to indemnify under Alabama law may not be decided before judgment in the underlying litigation."). Indeed, Georgia courts have determined there was no duty to indemnify before the underlying litigation resolved. See, e.g., Rucker v. Columbia Nat'l Ins. Co., 705 S.E.2d 270, 274 (Ga. Ct. App. 2010) (upholding trial court's determination that insurer "had no duty to defend or indemnify" because "the policy did not provide coverage for the claim asserted"); Grain Dealers Mut. Ins. Co. v. Pat's Rentals, Inc., 492 S.E.2d 702, 703 (Ga. Ct. App. 1997) (holding that coverage for negligent operation of motor vehicle by the insured's employees was "expressly excluded under the motor vehicle exclusion" of the policy and, thus, the insurer had "no duty to defend or to indemnify").

The duty to indemnify issue is ripe in this case. There is no dispute of material fact as to Trisura's duty to indemnify because the Policy unambiguously excludes bodily injuries and personal and advertising injuries arising out of firearms. That is, the Policy "forecloses any duty to indemnify for the same reasons it forecloses any duty to defend." Snell, 102 F.4th at 1219. Accordingly, Trisura has no duty to indemnify Nyrsha with

regard to the underlying lawsuits, and its motion for judgment on the pleadings is **GRANTED** in this regard.[3]

### CONCLUSION

The injuries asserted by Trotman and Douglas in the underlying lawsuits are excluded from coverage under the Policy's Firearms or Weapons Exclusion.  Accordingly, Trisura has no duty to defend Nyrsha in the underlying lawsuits.  Further, no dispute of material fact exists as to Trisura's duty to indemnify, because the Policy clearly and unambiguously forecloses that duty.  As such, Trisura's motion for judgment on the pleadings, dkt. no. 26, is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff Trisura and close this case.

**SO ORDERED**, this 25th day of July, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] Because the Court concludes the Firearms Exclusion forecloses Trisura's duties to defend and indemnify, the Court need not address Trisura's other bases for the same relief.

16